# Exhibit "A"

Loan No.:

# NOTE

MIN.:

| December 13, 2005 | College Point | New York |
|---|---|---|
| *[Date]* | *[City]* | *[State]* |

**24-02 Oceancrest Boulevard, Far Rockaway, NY 11691**
*[Property Address]*

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **466,000.00**  (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is **BNY Mortgage Company LLC**.  I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of  **6.375 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.    PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the  **1st** day of each month beginning on  **February, 2006**.  I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on  **January 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **EverHome Mortgage Company, P.O. Box 530579, Atlanta, GA  30353-0579** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **2,907.23** .

## 4.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5.    **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.    **BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **2.000** % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.
    **(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
    **(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
    **(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
    **(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_J. Patricia Johnson_ (signature)                                     (Seal)
J. Patricia Johnson                                                  -Borrower

                                                          (Seal)
                                                          -Borrower

Pay to the order of                                        (Seal)
WELLS  FARGO  BANK,  NA                                    -Borrower
Without Recourse
WASHINGTON MUTUAL BANK, FA

By _____
CYNTHIA RILEY
VICE PRESIDENT                                             (Seal)
                                                          -Borrower

PAY TO THE ORDER OF   EverBank

WITHOUT RECOURSE
BY: BNY MORTGAGE COMPANY LLC

SIGNED: _____
MARIE M. GRIFFIS
ASST. VICE PRESIDENT

PAY TO THE ORDER OF                    [Sign Original Only]
WASHINGTON MUTUAL BANK, FA

WITHOUT RECOURSE
BY: EverBank

SIGNED: _Betty Y. Ellis_
Betty Y. Ellis
Asst. Vice President

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____
SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT
0005

Pursuant to CPLR 2105 I have compared
this document to the original and found
it to be a true and complete copy.

Signed: _____

Name: _Sheva Rosenblum_

MULTISTATE Fixed Rate Note — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3233  01/01
New York COMPLIANCE SOURCE                                 Page 3 of 3                              12601NY 08/00
www.compliancesource.com

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 23 |
|---|---|

**Document ID:**          Document Date: 12-13-2005      Preparation Date: 01-13-2006
Document Type: MORTGAGE
Document Page Count: 21

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| TRIBOROUGH LAND SERVICES AS AGENT FOR UGT | BNY MORTGAGE COMPANY, LLC |
| 1121 OLD WALT WHITMAN ROAD | 8201 CYPRESS PLAZA DRIVE |
| *****PICK UP***** TBL10580Q | SUITE 100 |
| MELVILLE, NY  11747 | JACKSONVILLE, FL  32256 |
| 631-385-8844 | |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 15733 | 54 | Entire Lot | 24-02 OCEAN CREST BLVD |

**Property Type: DWELLING ONLY - 4 FAMILY**

## CROSS REFERENCE DATA

CRFN_____  *or*  Document ID_____  *or*  _____  Year_____  Reel ___  Page _____  *or*  File Number_____

## PARTIES

| **MORTGAGER/BORROWER:** | **MORTGAGEE/LENDER:** |
|---|---|
| J PATRICIA JOHNSON | MERS |
| 24-02 OCEANCREST BOULEVARD | P.O. BOX 2026 |
| FAR ROCKAWAY, NY  11691 | FLLINT, MI  48501 |

  x  Additional Parties Listed on Continuation Page

## FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 142.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 466,000.00 | Affidavit Fee:  $ | 0.00 |
| Taxable Mortgage Amount: | $ | 466,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 2,330.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 4,660.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 1,165.00 | | |
| MTA: | $ | 1,398.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 9,553.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed     02-07-2006 10:13
City Register File No.(CRFN):
**2006000071069**

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 23 |
|---|---|

**Document ID: 2006011300581001**   Document Date: 12-13-2005   Preparation Date: 01-13-2006
Document Type: MORTGAGE

**PARTIES**
**MORTGAGER/BORROWER:**
JOCELYN PATRICIA JAMES JOHNSON F/K/A
24-02 OCEANCREST BOULEVARD
FAR ROCKAWAY, NY 11691

**After recording please return to:**

**BNY Mortgage Company LLC**
*[Company Name]*

**Post Closing**
*[Name of Natural Person]*

**8201 Cypress Plaza Drive, Suite 100**
*[Street Address]*

**Jacksonville, FL 32256**
*[City, State  Zip Code]*

*Block*
*mG tAx*
*15733*
*9552*
*Lot*
*54*

———————— *[Space Above This Line For Recording Data]* ————————

Loan No.:

# MORTGAGE

MIN:

## WORDS USED OFTEN IN THIS DOCUMENT

**(A)**     **"Security Instrument."** This document, which is dated **December 13, 2005**, together with all Riders to this document, will be called the "Security Instrument."

**(B)**     **"Borrower."** **J Patricia Johnson, a single woman**, whose address is **24-02 Oceancrest Boulevard, Far Rockaway, NY 11691** sometimes will be called "Borrower" and sometimes simply "I" or "me."

*∦     * F ka     Jocelyn Patricia James Johnson*

**(C)**     **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.     **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

**(D)**     **"Lender"** is **BNY Mortgage Company LLC**. Lender is a **limited liability corporation** organized and existing under the laws of **the United States of America**. Lender's address is **1373-8 Veterans Memorial Highway, Hauppauge, NY 11788**.

**(E)**     **"Note."** The note signed by Borrower and dated **December 13, 2005**, will be called the "Note." The Note shows that I owe Lender **Four Hundred Sixty Six Thousand  and 00/100ths** Dollars (U.S. **$466,000.00**) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **January 1, 2036**.

**(F)**     **"Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(G)**     **"Loan."**  The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)**     **"Sums Secured."**  The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I)**     **"Riders."**  All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower *[check box as applicable]*:

☐ Adjustable Rate Rider      ☐ Condominium Rider                    ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider       ☐ Biweekly Payment Rider
☒ 1-4 Family Rider           ☐ Revocable Trust Rider
☐ Other(s) *[specify]*

**(J)**     **"Applicable Law."**  All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K)**     **"Community Association Dues, Fees, and Assessments."**  All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L)**     **"Electronic Funds Transfer."**  "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)**     **"Escrow Items."**  Those items that are described in Section 3 will be called "Escrow Items."

**(N)**     **"Miscellaneous Proceeds."**  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.  A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O)**     **"Mortgage Insurance."**   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)**     **"Periodic Payment."**  The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q)**     **"RESPA."**  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.



## UNITED GENERAL TITLE INSURANCE COMPANY

### SCHEDULE A
### LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Fr Rockaway in the 5th Ward of the Borough of Queens, City of New York, County of Queens, State of New York, County of Queens, State of New York, known and designated as and by lots Nos.16,17 and 18 and parts of lots 6,7,8,9,10 & 15 on a certain map entitled, "The Oceancrest Property of Mrs. Ann Norton situated at Far Rockaway, L.I. surveyed by Thomas D. Smith, Bellmore, L.I. dated June 1834" and filed as Map No.614 in the Office of the Clerk (now Register) of the County of Queens on 9/23/185 which said lots and parts of lots when taken together as one parcel are bounded and described as follows:

BEGINNING at a point on the northerly side of Ocean Avenue (Oceancrest Boulevard distant 258.26 feet southerly, southwesterly and westerly measured along the northerly and westerly side of Ocean Avenue as same curves from the southwesterly corner of Cornaga Avenue and Ocean Avenue said point of beginning where northerly side of Ocean Avenue is intersected by boundary line between land hereby described and land heretofore conveyed by Julia Hamman to Josephine Camen by deed dated 4/18/1899 and recorded in the Office of the Clerk of the County of Queens in Liber 1222 Page 287 on 9/4/1899;

RUNNING THENCE westerly along the northerly side of Ocean Avenue, 90.66 feet to land now or late of one Murphy;

THENCE north 50 degrees 34 minutes 23 seconds west along said land of Murphy 133.30 feet to the south side of lot No.10 on said map;

THENCE north 31 degrees 32 minutes 03 seconds east 13.43 feet to point where southerly side of land, herefore conveyed by Julia Hamman to Josephine Camen intersedes westerly side of said lot 10;

THENCE north 67 degrees 11 minutes 57 seconds east along said land of Camen 116.85 feet;

THENCE south 39 degrees 24 minutes 33 seconds east still along said land of Camen 107.92 feet to northerly side of Oceancrest Boulevard at the point or place of BEGINNING.

This Security Instrument covers real property, principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at **24-02 Oceancrest Boulevard**
                                                    *[Street]*
                   **Far Rockaway,**            New York **11691**                              ("Property Address"):
                   *[City, Town or Village]*           *[Zip Code]*
**Queens** County.  It has the following legal description:

**See exhibit "A" attached hereto and made a part hereof.**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.
I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on



principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) **Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Escrow Funds.** Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 26.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this

Security Instrument.   In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5.   Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not



economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.   Borrower's Obligations to Occupy The Property.**  I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7.   Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a)   Maintenance and Protection of the Property.**  I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b)   Lender's Inspection of Property.**  Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8.   Borrower's Loan Application.**  If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to



Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture, proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender every 14 days an amount equal to one-twenty-sixth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums,

or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time, and may enter into agreements with other parties that share or change their risk, or reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to (a) receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums



Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full. The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument

will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period



will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.



**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat or release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.**

**Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:**

(a) **I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;**

(b) **Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:**

(1) **The promise or agreement that I failed to keep or the default that has occurred;**

(2) **The action that I must take to correct that default;**

(3) **A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;**

(4) **That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of foreclosure and sale;**

(5) **That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and**

(6) **That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and**

(c) **I do not correct the default stated in the notice from Lender by the date stated in that notice.**

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 16 of this Security Instrument and in any rider signed by me and recorded with it.

Witnesses:

_____          _J Patricia Johnson_____  (Seal)
                                           J Patricia Johnson                -Borrower

_____          _____     (Seal)
                                                                             -Borrower


_____          _____     (Seal)
                                                                             -Borrower

_____          _____     (Seal)
                                                                             -Borrower
                                                                                 [

State of **New York**       §
                 § ss:
County of  Queens       §

On the  13  day of  Dec  in the year 200 5  before me, the undersigned, personally appeared **J Patricia Johnson**, known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

(Seal)

_____
Signature

_____
Office

LYDIA CEMACH
Notary Public, State of New York
No. 41-4795264
Qualified in Queens County
Commission Expires November 30, ____

New York Mortgage-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
—**THE COMPLIANCE SOURCE, INC.**—          Page 17 of 17
www.compliancesource.com

**Loan No.:** ████████

**MIN:** ████████████

# 1-4 FAMILY RIDER
# (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **13th** day of **December, 2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **BNY Mortgage Company LLC** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**24-02 Oceancrest Boulevard, Far Rockaway, NY 11691**

*[Property Address]*

      **1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

      **A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

      **B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**—THE COMPLIANCE SOURCE, INC.—**      **Page 1 of 3**
www.compliancesource.com



**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notices of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.



Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.    CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

J · Patricia Johnson _____ (Seal)          _____ (Seal)
**J Patricia Johnson**                -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                                    -Borrower

*[Sign Original Only]*

**Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**—THE COMPLIANCE SOURCE, INC.—**                        **Page 3 of 3**
   www.compliancesource.com



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|

**Document  ID:  2012032801340001**        Document Date: 03-27-2012        Preparation Date: 03-28-2012
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| DEFAULT ASSIGNMENT TEAM | DEFAULT ASSIGNMENT TEAM |
| WELLS FARGO HOME MORTGAGE, X9999-018 | WELLS FARGO HOME MORTGAGE, X9999-018 |
| P O BOX 1629 | P O BOX 1629 |
| MINNEAPOLIS, NY  55440-9790 | MINNEAPOLIS, NY  55440-9790 |
| 651-605-3759 | 651-605-3759 |
| steven.j.reiling@wellsfargo.com | steven.j.reiling@wellsfargo.com |

**PROPERTY DATA**

| Borough | Block  Lot | Unit | Address |
|---|---|---|---|
| QUEENS | 15733  54 | Entire Lot | 24-02 OCEAN CREST BLVD |

Property Type:  DWELLING ONLY - 4 FAMILY

**CROSS REFERENCE DATA**

Document  ID:  2006011300581001

**PARTIES**

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION | WELLS FARGO BANK, NA |
| SYSTEMS, INC. | 1 HOME CAMPUS |
| 1901 E VOORHEES ST STE C | DES MOINES, IA  50328 |
| DANVILLE, IL  61834 | |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed | 04-09-2012 12:30 | |
| Additional  MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2012000137290** | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*City Register Official Signature*

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790

## CORRECTIVE ASSIGNMENT OF MORTGAGE

Queens, New York
  "JOHNSON"
**SELLER'S LENDER ID#: 759**

**MERS #:** ████████ **SIS #** ████████

Date of Assignment: March 27th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY MORTGAGE
COMPANY, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501,
1901 E VOORHEES ST STE C., DANVILLE, IL  61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA  50328

Executed By: J PATRICIA JOHNSON, FKA JOCELYN PATRICIA JAMES JOHNSON A SINGLE WOMAN,  To:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY MORTGAGE COMPANY
LLC, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage:  12/13/2005 Recorded:  02/07/2006  as Instrument No.: 2006000071069  In the County of
Queens, State of New York.

-Assigned Wholly by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY
MORTGAGE COMPANY LLC, ITS SUCCESSORS AND ASSIGNS TO WELLS FARGO BANK, NA Dated:
01/25/2010 Recorded:  03/08/2010  as Instrument No.: 2010000078955

Section/Block/Lot QUEENS-15733-54

Property Address: 24-02 OCEANCREST BOULEVARD, FAR ROCKAWAY, NY  11691

*This assignment is being recorded to correct the scriveners error in the assignment recorded on the 8th day of
March, 2010 at Isntrument No. 2010000078955 as that assignment was signed without authority.

  This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

  KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $466,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

  TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written:

  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY MORTGAGE COMPANY,
LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS
On ____ 3|27|12

By: _____
_____, Kate Johnson
_____, Assistant Secretary

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On the **27th** day of **march** in the year **2012** before me, the undersigned,
personally appeared **Kate Johnson** , Assistant Secretary, personally known to
me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the
individual(s) acted, executed the instrument, and that such individuals(s) made such appearance before the
undersigned in the County of Dakota, State of Minnesota.

WITNESS my hand and official seal,

Julie Ann Prieto
Notary Expires: 1/31/2014
Dakota, Minnesota



JULIE ANN PRIETO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

(This area for notarial seal)

SEAL

| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER**<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. |  |
|---|---|

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|

**Document ID:  2019080600537001**          Document Date:  08-01-2019          Preparation Date: 08-06-2019
Document Type:  ASSIGNMENT, MORTGAGE
Document Page Count: 1

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| WELLS FARGO - LSA L2<br>733 MARQUETTE AVE<br>MINNEPOLIS, MN 55402 | WELLS FARGO - LSA L2<br>733 MARQUETTE AVE<br>MINNEPOLIS, MN 55402 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 15733 | 54 | Entire Lot | 24-02 OCEANCREST BLVD |

Property Type: DWELLING ONLY - 4 FAMILY

**CROSS REFERENCE DATA**

**CRFN:**    2006000071069
☒ Additional  Cross References on Continuation  Page

**PARTIES**

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| WELLS FARGO BANK, N.A.<br>1 HOME CAMPUS<br>DES MOINES, IA 50328 | SPECIALIZED LOAN SERVICING LLC<br>8742 LUCENT BLVD, SUITE 300<br>HIGHLANDS RANCH, CO 80129 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:    County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed          08-08-2019 13:32 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2019000252454** | | |
| Recording Fee: | $ | 51.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annett M Hill*

***City Register Official Signature***

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



| **RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION)** | | **PAGE 2 OF 3** |
|---|---|---|
| **Document ID: 2019080600537001** | Document Date: 08-01-2019 | Preparation Date: 08-06-2019 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**CROSS REFERENCE DATA**
**CRFN:** 2010000078955
**CRFN:** 2012000137290
**CRFN:** 2017000333563

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC: N9289-018
EAGAN, MN  55121-4400

**CORPORATE ASSIGNMENT OF MORTGAGE**

Queens, New York
"JOHNSON"

Date of Assignment: August 1st, 2019
Assignor: WELLS FARGO BANK, N.A. at  1 HOME CAMPUS, DES MOINES, IA  50328
Assignee: SPECIALIZED LOAN SERVICING LLC at 8742 LUCENT BLVD, SUITE 300, HIGHLANDS RANCH, CO 80129
Executed By: J PATRICIA JOHNSON FKA JOCELYN PATRICIA JAMES JOHNSON, A SINGLE WOMAN  To:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY MORTGAGE COMPANY
LLC, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 12/13/2005 Recorded:  02/07/2006  as Instrument No.: 2006000071069  In the County of
Queens, State of New York.

-Assigned Wholly by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY
MORTGAGE COMPANY LLC, ITS SUCCESSORS AND ASSIGNS TO WELLS FARGO BANK, N.A. Dated:
01/25/2010 Recorded:  03/08/2010  as Instrument No.: 2010000078955
-Assigned Wholly by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY
MORTGAGE COMPANY LLC, ITS SUCCESSORS AND ASSIGNS TO WELLS FARGO BANK, N.A. Dated:
03/27/2012 Recorded:  04/09/2012  as Instrument No.: 2012000137290
-Note Modification or Extension Dated: 08/08/2017 Recorded:  09/07/2017  as Instrument No.: 2017000333563,
between J PATRICIA JOHNSON FKA JOCELYN PATRICIA JAMES JOHNSON and WELLS FARGO BANK, N.A.,
$753,419.53

Section/Block/Lot QUEENS/15733/54

Property Address: 24-02 OCEANCREST BLVD, FAR ROCKAWAY, NY  11691
 This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

 KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $466,000.00 with interest, secured thereby, and the full benefit of all the
powers and all of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

 TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written:

WELLS FARGO BANK, N.A.
On  8-1-19

By: Yves Akara Kenao

Vice President Loan Documentation

STATE OF Minnesota
COUNTY OF Dakota

On the  ___ day of August Yves Akara Kenao the year 2019  before me, the undersigned,
personally appeared _____, Vice President Loan Documentation, personally
known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the
undersigned in the County of Dakota, State of Minnesota.

WITNESS my hand and official seal,

Thomas Sutsada Sananikone
Notary Expires: 1/31/2021
Dakota, Minnesota

THOMAS SUTSADA SANANIKONE
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2021

(This area for notarial seal)

PREPARED BY: WELLS FARGO BANK, N.A.



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

**Document ID: 2021021700507001**    Document Date: 02-11-2021    Preparation Date: 02-22-2021
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| RICHMOND MONROE - BAYVIEW HUD<br>82 JIM LINEGAR LANE<br>KIMBERLING CITY, MO 65686<br>SUPPORT@SIMPLIFILE.COM | RICHMOND MONROE GROUP<br>PO BOX 458<br>KIMBERLING CITY, MO 65686<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 15733 | 54 | Entire Lot | 24-02 OCEANCREST BOULEVARD |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2006000071069
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| SPECIALIZED LOAN SERVICING LLC<br>4425 PONCE DE LEON BLVD.,, 5TH FLOOR<br>CORAL GABLES, FL 33146 | COMMUNITY LOAN SERVICING, LLC<br>4425 PONCE DE LEON BLVD.,, 5TH FLOOR<br>CORAL GABLES, FL 33146 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed          02-23-2021 09:57 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2021000064842** | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M Hill*

***City Register Official Signature***

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



| RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION) | PAGE 2 OF 3 |
| --- | --- |

**Document ID: 2021021700507001**    Document Date: 02-11-2021        Preparation Date: 02-22-2021
Document Type: ASSIGNMENT, MORTGAGE

**CROSS REFERENCE DATA**
**CRFN:** 2010000078955
**CRFN:** 2012000137290
**CRFN:** 2017000333563
**CRFN:** 2019000252454

**PARTIES**

**ASSIGNOR/OLD LENDER:**
COMMUNITY LOAN SERVICING, LLC
4425 PONCE DE LEON BLVD.,, 5TH FLOOR
CORAL GABLES, FL 33146

**Recording Requested By:**
RICHMOND MONROE GROUP, INC.

**When Recorded Return To:**
RICHMOND MONROE GROUP, INC.
P.O. BOX 458
KIMBERLING CITY, MO 65686

Loan #
TS Ref #:
Client Ref #

## CORPORATE ASSIGNMENT OF MORTGAGE

NY/QUEENS

Assignment Prepared on: February 11, 2021

**ASSIGNOR: SPECIALIZED LOAN SERVICING LLC BY COMMUNITY LOAN SERVICING, LLC ITS
ATTORNEY IN FACT** , at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

**ASSIGNEE: COMMUNITY LOAN SERVICING, LLC**, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL
GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named
Assignee all interest under that certain Mortgage Dated 12/13/2005, in the amount of $466,000.00, executed by J
PATRICIA JOHNSON FKA JOCELYN PATRICIA JAMES JOHNSON, A SINGLE WOMAN to MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BNY MORTGAGE COMPANY LLC, ITS
SUCCESSORS AND ASSIGNS and Recorded: 2/7/2006, Instrument #: 2006000071069 in QUEENS County, State
of New York.

Property Address: 24-02 OCEANCREST BOULEVARD, FAR ROCKAWAY, NY, 11691
Block: 15733 / Lot: 54

Document References:
- Assignment Dated: 1/25/2010 from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE
FOR BNY MORTGAGE COMPANY, LLC ITS SUCCESSORS AND ASSIGNS to WELLS FARGO BANK, N.A.
Recorded: 3/8/2010, Instrument #: 2010000078955
- CORRECTIVE ASSIGNMENT OF MORTGAGE Dated: 3/27/2012 from MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY MORTGAGE COMPANY LIMITED LIABILITY
COMPANY, ITS SUCCESSORS AND ASSIGNS to WELLS FARGO BANK, NA Recorded: 4/9/2012, Instrument #:
2012000137290
- LOAN MODIFICATION AGREEMENT FOR THE NEW MONEY AMOUNT OF $314,576.92 Dated: 8/8/2017 for
$753,419.53 from J PATRICIA JOHNSON FKA JOYCELYN PATRICIA JAMES JOHNSON to WELLS FARGO
BANK, N.A. Recorded: 9/7/2017, Instrument #: 2017000333563
- Assignment Dated: 8/1/2019 from WELLS FARGO BANK, N.A. to SPECIALIZED LOAN SERVICING LLC
Recorded: 8/8/2019, Instrument #: 2019000252454

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms
and conditions of the above-described Mortgage.

SPECIALIZED LOAN SERVICING LLC BY COMMUNITY LOAN SERVICING, LLC ITS ATTORNEY IN FACT

On: February 11, 2021

By:
Name:      JESSICA BROWN
Title:      VICE PRESIDENT

State of MISSOURI
County of STONE

On February 11, 2021, before me, Stella Shepherd, a Notary Public in and for STONE County, in the State of
MISSOURI, personally appeared JESSICA BROWN, VICE PRESIDENT, COMMUNITY LOAN SERVICING, LLC AS
ATTORNEY IN FACT FOR SPECIALIZED LOAN SERVICING LLC, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their
signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

Stella Shepherd
Notary Expires: 6/29/2024 / #: 20274072

STELLA SHEPHERD
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES JUNE 29, 2024
TANEY COUNTY
COMMISSION #20274072



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 5 |
|---|---|

**Document ID:** 2021120700075001      Document Date: 10-20-2021      Preparation Date: 12-07-2021
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| MERIDIAN ASSET SERVICES<br>3201 34TH STREET SOUTH<br>SAINT PETERSBURG, FL 33711<br>CATHERINELATELLA@SITUSAMC.COM | MERIDIAN ASSET SERVICES LLC<br>3201 34TH STREET SOUTH SUITE B310<br>ST. PETERSBURG, FL 33711<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 15733 | 54 | Entire Lot | 24-02 OCEAN CREST BLVD |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:**    2006000071069

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| COMMUNITY LOAN SERVICING, LLC<br>4425 PONCE DE LEON BLVD 5TH FLOOR<br>CORAL GABLES, FL 33146 | BAYVIEW DISPOSITIONS VI, LLC<br>4425 PONCE DE LEON BLVD 5TH FLOOR<br>CORAL GABLES, FL 33146 |

☒  Additional  Parties Listed on Continuation  Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        12-14-2021 13:18
City Register File No.(CRFN):
**2021000490196**

*annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 5 |
|---|---|

**Document ID: 2021120700075001**  Document Date: 10-20-2021  Preparation Date: 12-07-2021
Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**

**ASSIGNOR/OLD LENDER:**
BAYVIEW LOAN SERVICING, LLC
4425 PONCE DE LEON BLVD 5TH FLOOR
CORAL GABLES, FL 33146

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

_____    Space above for Recorder's use _____

Section: N/A Lot: **54** Block: **15733**
Loan No: ▮▮▮▮

### ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **COMMUNITY LOAN SERVICING, LLC, F/K/A BAYVIEW LOAN SERVICING, LLC**, whose address is **4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL 33146**, (ASSIGNOR), does hereby grant, assign and transfer to **BAYVIEW DISPOSITIONS VI, LLC**, whose address is **4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL 33146**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **12/13/2005**
Original Loan Amount: **$466,000.00**
Executed by (Borrower(s)): **J PATRICIA JOHNSON FKA JOCELYN PATRICIA JAMES JOHNSON**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR BNY MORTGAGE COMPANY LLC, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: **2006000071069** in the Recording District of **Queens New York City, NY**, Recorded on **2/7/2006**.

Chain Exhibit: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **24-02 OCEANCREST BOULEVARD, FAR ROCKAWAY, NEW YORK 11691**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

**Date: 10/20/2021**

COMMUNITY LOAN SERVICING, LLC, F/K/A BAYVIEW LOAN SERVICING, LLC

By: **DAVID BRIGGS**
Title: **FIRST VICE PRESIDENT**

Witness Name: ____ Diana Magee

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **FLORIDA**
County of      **MIAMI-DADE**

On 10/20/2021, before me, **ISABEL MOLINA**, a Notary Public, personally appeared **DAVID BRIGGS, FIRST VICE PRESIDENT** of/for **COMMUNITY LOAN SERVICING, LLC, F/K/A BAYVIEW LOAN SERVICING, LLC**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that **DAVID BRIGGS**, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of **MIAMI-DADE**, State of **FLORIDA.**

Witness my hand and official seal.

(Notary Name): **ISABEL MOLINA**
My commission expires: **05/07/2023**

ISABEL MOLINA
Notary Public-State of Florida
Commission # GG 331968
My Commission Expires
May 07, 2023



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 6 |
|---|---|

**Document ID:** 2021120700075002   **Document Date:** 11-10-2021   **Preparation Date:** 12-07-2021
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 4

| PRESENTER: | RETURN TO: |
|---|---|
| MERIDIAN ASSET SERVICES<br>3201 34TH STREET SOUTH<br>SAINT PETERSBURG, FL 33711<br>CATHERINELATELLA@SITUSAMC.COM | MERIDIAN ASSET SERVICES LLC<br>3201 34TH STREET SOUTH SUITE B310<br>ST. PETERSBURG, FL 33711<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 15733 | 54 | Entire Lot | 24-02 OCEAN CREST BLVD |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2006000071069

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| BAYVIEW DISPOSITIONS VI, LLC<br>4425 PONCE DE LEON BLVD 5TH FLOOR<br>CORAL GABLES, FL 85251 | U.S. BANK TRUST NATIONAL ASSOCIATION<br>7114 E STETSON DR. SUITE 250<br>SCOTTSDALE, AZ 85251 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 57.00 | |
| Affidavit Fee: | $ | 0.00 | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed          12-14-2021 13:18
City Register File No.(CRFN):
**2021000490197**

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 6 |
|---|---|

**Document ID: 2021120700075002**     Document Date: 11-10-2021     Preparation Date: 12-07-2021
Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**

**ASSIGNEE/NEW LENDER:**
IGLOO SERIES V TRUST
7114 E STETSON DR. SUITE 250
SCOTTSDALE, AZ 85251

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

_____ Space above for Recorder's use _____

Section: N/A Lot: **54** Block: **15733**
Loan No:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **BAYVIEW DISPOSITIONS VI, LLC**, whose address is **4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL 33146**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES V TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **12/13/2005**
Original Loan Amount: **$466,000.00**
Executed by (Borrower(s)): **J PATRICIA JOHNSON FKA JOCELYN PATRICIA JAMES JOHNSON**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR BNY MORTGAGE COMPANY LLC, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume **N/A**, Page **N/A**
Document/Instrument No: **2006000071069** in the Recording District of **Queens New York City**, NY, Recorded on **2/7/2006**.

Chain Exhibit: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **24-02 OCEANCREST BOULEVARD, FAR ROCKAWAY, NEW YORK 11691**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

**Date: 11/10/2021**

**BAYVIEW DISPOSITIONS VI, LLC**

By: **PETER SUAREZ**
Title: **ASSISTANT VICE PRESIDENT**

Witness Name: **Diana Magee**

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **FLORIDA**
County of      **MIAMI-DADE**
         **NOV 1 0 2021**
On _____, before me, **ISABEL MOLINA**, a Notary Public, personally appeared **PETER SUAREZ, ASSISTANT VICE PRESIDENT** of/for **BAYVIEW DISPOSITIONS VI, LLC,** personally

known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct.  I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that **PETER SUAREZ**, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of **MIAMI-DADE**, State of **FLORIDA.**

Witness my hand and official seal.

(Notary Name): **ISABEL MOLINA**
My commission expires: **05/07/2023**

ISABEL MOLINA
Notary Public-State of Florida
Commission # GG 331968
My Commission Expires
May 07, 2023

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

_____ Space above for Recorder's use _____

Section: **N/A** Lot: **54** Block: **15733**
Loan No: ▇▇▇▇▇

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the
undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES V
TRUST,** whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**,
(ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS
TRUSTEE FOR CABANA SERIES V TRUST,** whose address is **7114 E. STETSON DR., SUITE 250,
SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial
interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and
any rights due or to become due thereon.

Date of Mortgage: **12/13/2005**
Original Loan Amount: **$466,000.00**
Executed by (Borrower(s)): **J PATRICIA JOHNSON FKA JOCELYN PATRICIA JAMES JOHNSON**
Original Lender:  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS
NOMINEE FOR BNY MORTGAGE COMPANY LLC, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book/Liber/Volume **N/A**, Page **N/A**
Document/Instrument No: **2006000071069** in the Recording District of **Queens New York City, NY**, Recorded on
**2/7/2006.**

Chain Exhibit:  SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **24-02 OCEANCREST BOULEVARD, FAR ROCKAWAY, NEW
YORK 11691**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **2/15/2022**

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES V TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MARK THOMAS WATERMAN**
Title: **VICE PRESIDENT**

Witness Name: **DOMINIC KOCH**

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of       **FLORIDA**
County of    **PINELLAS**

On **2/15/2022**, before me, **JEFF G. JORDAN**, a Notary Public, personally appeared **MARK THOMAS WATERMAN, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES V TRUST,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that **MARK THOMAS WATERMAN**, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of **PINELLAS**, State of **FLORIDA.**

Witness my hand and official seal.

(Notary Name): **JEFF G. JORDAN**
My commission expires: **2/26/2024**

Jeff G. Jordan
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG962762
Expires 2/26/2024

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 14 |
|---|---|

**Document ID:** 2017090601262001       **Document Date:** 08-08-2017       **Preparation Date:** 09-06-2017
**Document Type:** MORTGAGE AND CONSOLIDATION
**Document Page Count:** 12

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| SERVICELINK - LOAN MODIFICATION<br>3220 EL CAMINO REAL<br>IRVINE, CA 92602 | SERVICELINK - LOAN MODIFICATION<br>3220 EL CAMINO REAL<br>IRVINE, CA 92602 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 15733 | 54 | Entire Lot | 24-02 OCEAN CREST BLVD |

**Property Type:** DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

**CRFN:**    2006000071069

**PARTIES**

| **MORTGAGOR:** | **MORTGAGEE:** |
|---|---|
| JPATRICIA JOHNSON<br>24-02 OCEANCREST BLVD.<br>FAR ROCKAWAY, NY 11691 | WELLS FARGO BANK, NA<br>3476 STATEVIEW BLVD., MAC #X7801-03K<br>FORT MILL, SC 29715 |

☒ Additional  Parties Listed on Continuation  Page

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 753,419.53 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 314,576.92 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 1,573.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 3,146.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 786.50 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 913.80 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed         09-07-2017 13:56 | | |
| TOTAL: | $ | 6,419.30 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 97.00 | **2017000333563** | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M Hill*

***City Register Official Signature***

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



| **RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION)** | **PAGE 2 OF 14** |
|---|---|

**Document ID: 2017090601262001**          Document Date: 08-08-2017                    Preparation Date: 09-06-2017
Document Type: MORTGAGE AND CONSOLIDATION

---

**PARTIES**

**MORTGAGOR:**
JOYCELYN PATRICIA JOHNSON
24-02 OCEANCREST BLVD.
FAR ROCKAWAY, NY 11691

After Recording Please Mail To:
**SERVICELINK**
**LOAN MODIFICATION SOLUTIONS**
**3220 EL CAMINO REAL**
**IRVINE, CA  92602**

"The Premises is or will be improved with
a one or two family house or dwelling"

Section/Block/Lot S: 4 B: 15733 L: 54

———————————————— [Space Above This Line For Recording Data] ————————————————

**Original Principal Amount $466,000.00**
**Unpaid Principal Amount $438,842.61**        **Loan No:** ▮▮▮▮▮▮▮▮
**New Principal Amount $753,419.53**
**Total Cap Amount $314,576.92**
17022971

# Loan Modification Agreement

Executed on this day: **August 8, 2017**
Borrower ("I"):[1]  **J PATRICIA JOHNSON FKA JOYCELYN PATRICIA JAMES JOHNSON**
Borrower Mailing Address: **211 E PENN ST, LONG BEACH, NY 11561**
Lender or Servicer ("Lender"):  **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: **3476 STATEVIEW BLVD, MAC#X7801-03K, FORT MILL, SC 29715**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **December 13, 2005** and Note
("Note"): **December 13, 2005**
Property Address ("Property"): **24-02 OCEANCREST BLVD, FAR ROCKAWAY, NY 11691**

Legal Description:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Mortgage made by **J PATRICIA JOHNSON FKA JOCELYN PATRICIA JAMES JOHNSON, A
SINGLE WOMAN** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR BNY MORTGAGE COMPANY LLC., ITS SUCCESSORS AND ASSIGNS.** for
**$466,000.00** and interest, dated **December 13, 2005** and recorded on **February 7, 2006** in
**Instrument No.CRFN 2006000071069** of the Official Records of **QUEENS** County, **NEW YORK**
Mortgage Tax Paid **$9,553.00**

**CHAIN OF TITLE: SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF:**

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I."  For purposes of this document
words signifying the singular (such as "I" or "my") shall include the plural (such as "we" or "our") and vice versa where appropriate.

This Loan Modification Agreement ("Agreement") is made on **August 8, 2017** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

## 1.  **Borrower Representations**.

I certify, represent to Lender and agree:

- A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future, I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification;

- B.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

- C.  If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

- D.  I have made or will make all payments required within this modification process;

- E.  In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

## 2.  **The Modification**.

A. The modified principal balance of the Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of my Note will be **$753,419.53** (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B. **$178,419.53** of the New Principal Balance shall be deferred (the "Deferred Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Balance. The New Principal Balance less the Deferred Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$575,000.00**. Interest at the rate of **4.250**% will begin to accrue on the Interest Bearing Principal Balance as of **August 1, 2017** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **September 1, 2017**. Interest due on each monthly payment will be calculated by multiplying the Interest Bearing Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|---------------------------|----------------------------------------|--------------------------------|------------------------|-------------------|
| 480 | 4.250% | 08/01/2017 | $2,493.32 | $1,288.27 | $3,781.59 | 09/01/2017 |

**\*This includes an escrow shortage amount to be paid over the first 60 month term. After your modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.**

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

Borrower agrees to pay in full the Deferred Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date an interest in the Property is sold or transferred, (ii) the date on which the entire Interest Bearing Principal Balance is paid off, or (iii) the Maturity Date.

Borrower agrees that any partial prepayments of Principal may be applied at Lender's discretion first to any Deferred Balance before applying such partial prepayment to other amounts due.

**Notice to Borrower:** The Deferred Balance will result in a lump sum payment due at the time of loan maturity or earlier upon payoff of the loan. If the Borrower does not have the funds to pay the lump sum payment when it comes due, the Borrower may have to obtain a new loan against your property. In that case, the Borrower may have to pay commissions, fees, and expenses for the arranging of the new loan. In addition, if the Borrower is unable to make the monthly payments or the lump sum payment, the Borrower may lose the property and all equity through foreclosure. Keep this in mind in deciding upon this modification. The lump sum payment on this loan is due **August 1, 2057** or upon earlier payoff of the loan.

### 3.  Loan Modification Terms.

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A.  The current contractual due date has been changed from **December 1, 2009** to **September 1, 2017**. The first modified contractual due date is **September 1, 2017**.

B.  The maturity date is **August 1, 2057**.

C.  The amount of Recoverable Expenses* to be capitalized will be U.S. **$7,359.03**.

   *Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D.  Lender will forgive outstanding Other Fees U.S. **$30.00**. Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

E.  Lender will forgive outstanding  NSF Fees U.S. **$0.00**.

F.  Lender agrees to waive all unpaid Late Charges in the amount of U.S. **$2,150.20**.

G.  The amount of interest to be included (capitalized) will be U.S. **$216,815.55**.

H.  The amount of the Escrow Advance to be capitalized will be U.S. **$90,402.34**.

### 4.  Additional Agreements.

I agree to the following:

A.  If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B.  If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

| Loan Modification Agreement | Page 4 of 12 | |

C. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan
Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to
provide for payment of amounts due for: (a) taxes and assessments and other items which can
attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold
payments or ground rents on the Property, if any; (c) premiums for any and all insurance
required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any
sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance
with the Loan Documents; and (e) any community association dues, fees, and assessments that
Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish
to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds
for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow
Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any
time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly,
when and where payable, the amounts due for any Escrow Items for which payment of Funds has
been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such
payment within such time period as Lender may require. My obligation to make such payments
and to provide receipts shall for all purposes be deemed to be a covenant and Agreement
contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan
Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay
the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents
and this Agreement and pay such amount and I shall then be obligated to repay to Lender any
such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice
given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender
all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to
apply the Funds at the time specified under the Real Estate Settlement Procedures Act
("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.
Lender shall estimate the amount of Funds due on the basis of current data and reasonable
estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency,
instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so
insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow
Items no later than the time specified under RESPA. Lender shall not charge me for holding and
applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless
Lender pays me interest on the Funds and applicable law permits Lender to make such a charge.
Unless an Agreement is made in writing or applicable law requires interest to be paid on the
Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and
I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me,
without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me
for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as
defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the
amount necessary to make up the shortage in accordance with RESPA, but in no more than 12
monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA,
Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to
make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D. That the mortgage insurance premiums on the loan, if applicable, may increase as a result of the modification of the loan which may result in a higher total monthly payment. Furthermore, the cancellation date, termination date, or final termination of the private mortgage insurance may be recalculated to reflect the modified terms and conditions of the loan.

E. If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. *Exception:* In the state of California, Life, A&H, and IUI insurance must be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

F. If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

G. If the Borrower's home owners insurance should lapse, Wells Fargo Home Mortgage reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

H. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

I. If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

J. If Borrower fails to pay Lender the amount due and owing or to pay any monthly payment on the dates above, Borrower shall surrender the Property to Lender. If Borrower fails or refuses to surrender the Property to Lender, Lender may exercise any and all remedies to recover the Property as may be available to Lender pursuant to its security interest and lien and applicable law. These remedies may include the recovery of reasonable attorney's fees actually incurred, plus legal expenses and expenses for entering on the Property to make repairs in any foreclosure action filed to enforce the Lender lien. Lender's rights and remedies extend only to the Property, and any action related to the Property itself and not to recovery of any amount owed to Lender under the Note as modified herein, which has been discharged in bankruptcy.

K.  If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

L.  If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

M.  CORRECTION AGREEMENT:  The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Home Mortgage, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf.  This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification.  Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

N.  If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement.  Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

O.  All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

P.  This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

Q.  In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

R.  If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated.  This means that Borrower cannot obtain additional advances and must make payments according to this Agreement.  Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

S.  Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **August 1, 2017**.

T.  I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

U.  Borrower must deliver to Wells Fargo Home Mortgage a properly signed modification Agreement by **August 23, 2017**. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, Wells Fargo Home Mortgage may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. Wells Fargo Home Mortgage may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the Borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**

J-Patricia Johnson FKA
Joycelyn Patricia James Johnson                    (Seal)    08-18- 2017
Borrower:   **J   PATRICIA   JOHNSON   FKA**                    Date
**JOYCELYN PATRICIA JAMES JOHNSON**

_____   (Seal)    _____
Borrower:                                                       Date

———— *[Space Below This Line For Acknowledgment in Accordance with Laws of Jurisdiction]* ————

**ACKNOWLEDGMENT**

State of *New York*

County of *Nassau*

§
§
§

On the **18** $^{TH}$ day of ***August***, in the year **2017** before me, **Clifford Guinyard**, the undersigned, a Notary Public in and for said State, personally appeared **J PATRICIA JOHNSON FKA JOYCELYN PATRICIA JAMES JOHNSON** personally known to me (or proved to me on the basis of satisfactory evidence) to be the individual(s) whose name is(are) subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies) and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Signature of Individual Taking Acknowledgment

CLIFFORD GUINYARD
Printed Name

CLIFFORD GUINYARD
Notary Public - State of New York
No. 01GU6089251
Qualified in Nassau County
My Comm. Expires Mar. 24, 2019

Notary Public
Office of Individual Taking Acknowledgment

(Seal)

My Commission Expires: **03/24/2019**

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**WELLS FARGO BANK, N.A.**

By: **Birhanu T Lakew**
**Vice President Loan Documentation**
                                            _8-30-17_  Birhanhhew

-Lender                          Date of Lender's Signature

## ACKNOWLEDGMENT

State of Minnesota           §
                             §
County of Dakota             §

On this __30__ day of AuGuSt in the year __2017__, before me, the undersigned, a Notary
Public in and for said State, personally appeared _Birhanu T Lakew_                        the
**Vice President Loan Documentation**, personally known to me (or proved to me on the basis of satisfactory evidence)
to be the individual(s) whose name is(are) subscribed to the within instrument and acknowledged to me that he/she
executed the same in his/her capacity(ies) and that by his/her signature(s) on the instrument, the individual(s), or the
person upon behalf of which the individual(s) acted, executed the instrument.

_____ in _____
(insert the city or other political subdivision)        (and insert the State and County or other place the acknowledgment was taken)

_____
Signature of Individual Taking Acknowledgment

KIRSTEN HUST
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2022

**Kirsten Hust**
Printed Name

Notary Public
Office of Individual Taking Acknowledgment

(Seal)                                    My Commission Expires: __01/31/2022__

**Loan Modification Agreement**          **Page 10 of 12**

## EXHIBIT A

**BORROWER(S): J PATRICIA JOHNSON FKA JOYCELYN PATRICIA JAMES JOHNSON**

**LOAN NUMBER: (scan barcode)**

**LEGAL DESCRIPTION:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING AT FAR ROCKAWAY IN THE 5TH WARD OF THE BOROUGH OF QUEENS, CITY OF NEW YORK, COUNTY OF QUEENS, STATE OF NEW YORK, KNOWN AND DESIGNATED AS AND BY LOTS NOS. 16,17, AND 18 AND PARTS OF LOTS 6,7,8,9,10 & 15 ON A CERTAIN MAP ENTITLED, "THE OCEANCREST PROPERTY OF MRS. ANN NORTON SITUATED AT FAR ROCKAWAY, L.I. SURVEYED BY THOMAS D. SMITH, BELLMORE, L.I. DATED JUNE 1834" AND FILED AS MAP NO. 614 IN THE OFFICE OF THE CLERK (NOW REGISTER) OF THE COUNTY OF QUEENS ON 9/23/185 WHICH SAID LOTS AND PARTS OF LOTS WHEN TAKEN TOGETHER AS ONE PARCEL ARE BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF OCEAN AVENUE (OCEANCREST BOULEVARD DISTANT 258.26 FEET SOUTHERLY, SOUTHWESTERLY AND WESTERLY MEASURED ALONG THE NORTHERLY AND WESTERLY SIDE OF OCEAN AVENUE AS SAME CURVES FROM THE SOUTHWESTERLY CORNER OF CORNAGA AVENUE AND OCEAN AVENUE SAID POINT OF BEGINNING WHERE NORTHERLY SIDE OF OCEAN AVENUE IS INTERSECTED BY BOUNDARY LINE BETWEEN LAND HEREBY DESCRIBED AND LAND HERETOFORE CONVEYED BY JULIA HAMMAN TO JOSEPHINE CAMEN BY DEED DATED 4/18/1899 AND RECORDED IN THE OFFICE OF THE CLERK OF THE COUNTY OF QUEENS IN LIBER 1222 PAGE 287 ON 9/4/1899;

RUNNING THENCE WESTERLY ALONG THE NORTHERLY SIDE OF OCEAN AVENUE, 90.66 FEET TO LAND NOW OR LATE OF ONE MURPHY;

THENCE NORTH 50 DEGREES 34 MINUTES 23 SECONDS WEST ALONG SAID LAND OF MURPHY 133.30 FEET TO THE SOUTH SIDE OF LOT NO. 10 ON SAID MAP;

THENCE NORTH 31 DEGREES 32 MINUTES 03 SECONDS EAST 13.43 FEET TO POINT WHERE SOUTHERLY SIDE OF LAND, HEREFORE CONVEYED BY JULIA HAMMAN TO JOSEPHINE CAMEN INTERSEDES WESTERLY SIDE OF SAID LOT 10;

THENCE NORTH 67 DEGREES 11 MINUTES 57 SECONDS EAST ALONG SAID LAND OF CAMEN 116.85 FEET;

THENCE SOUTH 39 DEGREES 24 MINUTES 33 SECONDS EAST STILL ALONG SAID LAND OF CAMEN 107.92 FEET TO NORTHERLY SIDE OF OCEANCREST BOULEVARD AT THE POINT OR PLACE OF BEGINNING.

ALSO KNOWN AS: 24-02 OCEANCREST BLVD, FAR ROCKAWAY, NY 11691

---

**Loan Modification Agreement**                    Page 11 of 12

**EXHIBIT B**

**LOAN NUMBER** ▇▇▇▇▇▇▇

**ALSO KNOWN AS: 24-02 OCEANCREST BLVD, FAR ROCKAWAY, NY 11691**

**CHAIN OF TITLE:**

Mortgage made by **J PATRICIA JOHNSON FKA JOCELYN PATRICIA JAMES JOHNSON, A SINGLE WOMAN** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY MORTGAGE COMPANY LLC., ITS SUCCESSORS AND ASSIGNS.** for **$466,000.00** and interest, dated **December 13, 2005** and recorded on **February 7, 2006**in Instrument No. CRFN **2006000071069**  Mortgage Tax Paid **$9,553.00**

This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY MORTGAGE COMPANY LLC., ITS SUCCESSORS AND ASSIGNS.** to **WELLS FARGO BANK, N.A.**, by assignment of mortgage dated **January 25, 2010** and recorded on **March 8, 2010** in INSTRUMENT NO./CRFN **20100000078955**.

This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY MORTGAGE COMPANY, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS.** to **WELLS FARGO BANK, NA**, by assignment of mortgage dated **March 27, 2012** and recorded on **April 9, 2012** in INSTRUMENT NO./CRFN **2012000137290**.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

| **SUPPORTING DOCUMENT COVER PAGE** | **PAGE 1 OF 1** |
| --- | --- |

**Document ID: 2017090601262001**          Document Date: 08-08-2017          Preparation Date: 09-06-2017
Document Type: MORTGAGE AND CONSOLIDATION

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

MORTGAGE TAX AFFIDAVIT                                                                                    2

**Loan Originator Organization: Wells Fargo Bank, N.A., NMLSR ID:** ▮▮▮
**Individual Loan Originator's Name NMLSR ID: N/A**

# AFFIDAVIT PURSUANT TO
# SECTION 255 OF THE NEW YORK TAX LAW

STATE OF   *MN*   )
COUNTY OF *DAKOTA*   ) ss.:
                    )

*Birhanu T. Lakew*_____, being duly sworn, deposes and says:

1.  That he/she is the owner and holder, or the agent of the owner and holder, of the hereinafter described mortgage, and is familiar with the facts and circumstances set forth herein.

2.  A certain mortgage bearing the date of **December 13, 2005**, in the principal amount of **Four Hundred Sixty Six Thousand  and 00/100ths ($466,000.00)** (the "Mortgage") was made by **J PATRICIA JOHNSON FKA JOCELYN PATRICIA JAMES JOHNSON, A SINGLE WOMAN** as Mortgagor to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY MORTGAGE COMPANY LLC., ITS SUCCESSORS AND ASSIGNS.** as Original Mortgagee, securing the obligations described in that certain promissory note of even date therewith executed by Mortgagor in favor of Mortgagee, said mortgage being recorded in the Office of the [County Clerk/City Register], **QUEENS** County on **02/07/2006** at Reel/Liber N/A of Mortgages, Page N/A (or as Instrument No. **2006000071069**) , upon which the mortgage tax **$9,553.00** was duly paid thereon.

This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY MORTGAGE COMPANY LLC., ITS SUCCESSORS AND ASSIGNS.** to **WELLS FARGO BANK, N.A.**, by assignment of mortgage dated **January 25, 2010** and recorded on **March 8, 2010** in INSTRUMENT NO./CRFN **20100000078955**.

This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BNY MORTGAGE COMPANY, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS.** to **WELLS FARGO BANK, NA**, by assignment of mortgage dated **March 27, 2012** and recorded on **April 9, 2012** in INSTRUMENT NO./CRFN **2012000137290**.

3.  The instrument offered for recording herewith is a Modification of the Mortgage made by **J PATRICIA JOHNSON FKA JOYCELYN PATRICIA JAMES JOHNSON** to **WELLS FARGO BANK, N.A.**, effective **August 8, 2017** and recorded in the Office of the [County Clerk/City Register], **QUEENS** County.

4.  The instrument offered for recording herewith modifies the Mortgage and does not create or secure any new or further lien, indebtedness, or obligation other than the principal indebtedness or obligation secured by the Mortgage, with the exception of the following amount:

    a) Unpaid principal balance secured by the Mortgage: **$438,842.61**
    b) New unpaid principal balance: **$753,419.53**
    c) "b" minus "a" equals: **$314,576.92**
    d) Additional obligations secured by the Mortgage as modified:

Additional mortgage recording tax of **$6,419.30** is therefore being paid on this Modification on the sum set forth in Section 4c.

WHEREFORE, pursuant to Section 255 of the Tax Law, deponent claims exemption from further taxation as to the instrument offered for recording herewith.

Lender:
**WELLS FARGO BANK, N.A.**

By: _Birhanlwkew_        8-30-17

**Birhanu T Lakew**
**Vice President Loan Documentation**

Its: _____

Sworn to before me this 30 day of 8 , 17.

_Kirsten Hust_
Notary Public

**KIRSTEN HUST**
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2022

---

**Affidavit Pursuant to Section 255 of the New York Tax Law**
**The Compliance Source, Inc.**            **Page 2 of 2**